1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RALPH D. PLOIUM,<br><br>                    Plaintiff,<br><br>     v.<br><br>NANCY A. BERRYHILL,[1]<br><br>                    Defendant. | CASE NO. C16-5881-BAT<br><br>**ORDER REVERSING THE COMMISSIONER AND REMANDING FOR FURTHER PROCEEDINGS** |

Ralph D. Ploium seeks review of the denial of his application for Supplemental Security Income and Disability Insurance Benefits. He contends the ALJ erred by misevaluating the medical opinion evidence and in issuing an adverse credibility determination. Dkt. 15. Mr. Ploium further argues the ALJ's Residual Functional Capacity (RFC) and step five findings were erroneous based on the errors alleged. *Id.* As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 21, 2017 and is therefore substituted for Carolyn W. Colvin as the defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

ORDER REVERSING THE COMMISSIONER AND REMANDING FOR
FURTHER PROCEEDINGS - 1

## BACKGROUND

Mr. Ploium is currently 58 years old and has worked as a cashier and short order cook. Tr. 27, 58. On December 4, 2013, he applied for benefits, alleging disability as of May 1, 2013. Tr. 18. His applications were denied initially and on reconsideration. *Id.* The ALJ conducted a hearing on January 13, 2016, finding Mr. Ploium not disabled. Tr. 28.

Utilizing the five-step disability evaluation process,[2] the ALJ found Mr. Ploium met the insured status requirements through December 31, 2014; had not engaged in substantial gainful activity since the alleged onset date; and he has severe impairments of degenerative disc disease, left arm rotator cuff tendinitis, status post-intracranial hemorrhage, and seizures. Tr. 20-21. The ALJ found Mr. Ploium has the RFC to perform light work and can lift/carry 20 pounds occasionally and 10 pounds frequently and can push/pull the same; he can sit up to 6 hours in an 8-hour workday and stand or walk for 6 hours in an 8-hour workday; he is limited to occasional reaching overhead with the left upper extremity; he can frequently climb ramps and stairs but never ladders or scaffolds; he can frequently balance, stoop, kneel, and crouch but only occasionally crawl; he must never work around unprotected heights or moving mechanical parts and never operate a motor vehicle as part of the day-to-day job; and he must never work around machinery causing vibrations. Tr. 22. The ALJ then found Mr. Ploium is capable of performing his past relevant work as a cashier and short order cook, and was therefore not disabled. Tr. 26-27. As the Appeals Council denied Mr. Ploium's request for review, the ALJ's decision is the Commissioner's final decision. Tr. 1-6.

## DISCUSSION

**A.    The ALJ Did Not Harmfully Err in Evaluating Mr. Ploium's Credibility**

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

Where, as here, there is no evidence of malingering, an ALJ must provide specific, clear and convincing reasons for rejecting a claimant's testimony. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012); *accord Burrell v. Colvin*, 775 F.3d 1133, 1136 (9th Cir. 2014). On the record before it, the Court affirms the ALJ's adverse credibility determination.

As a preliminary matter, Mr. Ploium argues in a conclusory manner that this Court should find the ALJ's failure to properly evaluate all of the medical evidence "tainted his evaluation of Ploium's testimony." Dkt. 15 at 9. This Court has cautioned counsel on numerous occasions that it declines to impose a blanket rule that any error in the ALJ's assessment of the medical evidence undermines the ALJ's credibility finding *de facto*. Moreover, the Court declines to make such a finding in this case, because Mr. Ploium has failed to establish that the ALJ's errors with respect to the medical opinion evidence have any bearing on the ALJ's valid reason for discounting his credibility. *See* Section B, *infra.*

In evaluating Mr. Ploium's credibility, the ALJ observed he "already had a sporadic employment history and earnings record before his alleged onset date." Tr. 26 (citing Tr. 168-174). An ALJ reasonably takes into account a claimant's poor work history in assessing credibility. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (noting that claimant "had an extremely poor work history and has shown little propensity to work in her lifetime, which negatively affected her credibility regarding her inability to work") (internal quotation marks omitted); *see also* 20 C.F.R. § 416.929(c)(3); *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) (ALJ may consider work record in weighing claimant's credibility). Mr. Ploium does not dispute his poor work history, but, ignoring binding precedent, contends the reasoning is not convincing because it is irrelevant to any limitations he has experienced since "suffering a brain hemorrhage." Dkts. 15 at 9; 17 at 6. The argument is evasive and

unpersuasive. Because the ALJ's reasoning was based in both law and fact, he did not err.

The ALJ also offered other reasons for discounting Mr. Ploium's credibility which he challenges, but the Commissioner does not defend. Dkts. 15 at 9-11; 16 at 2-3. Even so, the ALJ's valid reason is not negated by the inclusion of erroneous reasons. Because any errors in the ALJ's credibility findings are therefore harmless, s*ee Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1162-63 (9th Cir. 2008), the Court declines to disturb the ALJ's credibility determination. Accordingly, the Court also declines to credit Mr. Ploium's testimony as true as he requests. *See* Dkt. 15 at 14.

**B.      The ALJ Erred in Evaluating the Medical Opinion Evidence**

Mr. Ploium argues the ALJ misevaluated the opinions of providers Bernard Stupski, D.O.; Donald Ramsthel, M.D.; Todd Bowerly, Ph.D.; and Robert Handler, M.D.; and also misevaluated other "recent evidence." Dkt. 15 at 2-8. An ALJ should generally give more weight to the opinion of a treating doctor than to that of a non-treating doctor, and more weight to the opinion of an examining doctor than to that of a non-examining doctor. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). The ALJ must give specific and legitimate reasons for rejecting a treating or examining doctor's opinion that is contradicted by another doctor, and clear and convincing reasons for rejecting a treating or examining doctor's uncontradicted opinion. *Lester*, 81 F.3d at 830-31. Here the Court finds the ALJ harmfully erred.

**1.      Bernard Stupski, D.O.**

The ALJ assigned "little weight" to treating doctor Bernard Stupski's November 2015 opinion that Mr. Ploium was limited to sedentary work. Tr. 25 (citing Tr. 425). The doctor's Physical Functional Evaluation described Mr. Ploium's chief complaints (left-side pain in his leg, him, and arm; weakness in the left upper extremity; dizziness and poor balance; and memory

loss) and referenced his May 2013 hospitalization for "traumatic subarachnoid hemorrhage." Tr. 423. The doctor opined the diagnosis of subarachnoid hemorrhage would have a moderate impact on his ability to work, and that Mr. Ploium would be limited to sedentary work. Tr. 424-25. The ALJ rejected the opinion because the provider failed to refer to objective findings or observations to support the opinion, noting the doctor cited only Mr. Ploium's subjective complaints and his "hospital discharge summary for his brain hemorrhage." Tr. 25.

The Commissioner argues the ALJ's analysis is supported by the doctor's failure to write anything in the evaluation section asking for laboratory, imaging, range of motion, and other diagnostic test results. Dkt. 16 at 3. But the assertion ignores the fact that the provider specifically referenced discharge notes from an earlier hospitalization. Both the ALJ and the Commissioner fail to explain why the provider's reference to discharge notes was insufficient to qualify as persuasive objective findings. *Cf. Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (ALJ "must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); *see also Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003) ("We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings.").

Additionally, the ALJ failed to acknowledge the provider's treating relationship with Mr. Ploium, and in doing so, failed to afford the opinion the deference to which it was "presumptively entitled." *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014). Mr. Ploium was first seen by Dr. Stupski after discharge from the hospital. Tr. 384. Dr. Stupski referred him for cognitive testing due to his recent head trauma. Tr. 387-87. Dr. Stupski again treated Mr. Ploium in November 2013, January 2014, November 2014, and October 2015, and noted

headaches and left-side pain. Tr. 372-91; 402-03, 409. If there was a valid reason to reject the opinion, the ALJ failed to provide it. The error was not harmless, as Dr. Stupski opined Mr. Ploium was limited to sedentary work, whereas Mr. Ploium's past work is characterized as light. *See* DICOT 211.462-014, 1991 WL 671841; DICOT 313.374-014, 1991 WL 672717. On remand, the opinion should be reevaluated.

**2.     Donald Ramsthel, M.D.**

Consultative medical examiner Donald Ramsthel, M.D., opined Mr. Ploium could walk or stand for 1-2 hours at a time up to 4 hours in an 8 hour day; sit for two hours at a time and up to 4-6 hours in a day; and carry 20 pounds infrequently and 10-15 pounds frequently. Tr. 354. The ALJ assigned the opinion "little weight," finding that new medical evidence since the September 2013 opinion was rendered indicated Mr. Ploium was "further limited in his postural activities." Tr. 25. Mr. Ploium contends the ALJ erred because he offered no explanation for his apparent rejection of Dr. Ramsthel's walking and standing limitations despite finding his condition had worsened. Dkt. 15 at 6. The Court agrees, and in doing so, rejects the Commissioner's argument that the ALJ did not need to account for any part of the doctor's opinion because it "was not consistent with the evidence of record [and was therefore] not a credible source of information about Plaintiff's limitations." Dkt. 16 at 4. First, this reasoning draws on case law concerning acceptable bases for issuing adverse credibility determinations, not for rejecting medical opinions. *See id.* (citing *Turner v. Comm'r, Soc. Sec. Admin.*, 613 F.3d 1217, 1225 (9th Cir. 2010)). Second, because the ALJ failed to discuss his reasons for rejecting a significant portion of the opinion, he failed to provide either clear and convincing or specific and legitimate reasons. Moreover, the reason the ALJ gave for rejecting the opinion suggested Mr. Ploium's conditions became *worse*, making necessary the need to explain the simultaneous

rejection of opined limitations consistent with a more severe condition. The error is harmful because the rejected portion of the opinion is more limited than indicated in Mr. Ploium's RFC. The opinion must be reevaluated on remand.

### 3. Todd D. Bowerly, Ph.D.

On September 12, 2013, Dr. Bowerly completed a psychological evaluation of Mr. Ploium based on objective testing and a clinical interview, and concluded in a medical source statement that he

> appears to demonstrate adequate understanding, reasoning, attention/concentration, memory, social skills and adaptation abilities. He may have reduced persistence secondary to weakness and problems following recent brain injury.

Tr. 344-49. The doctor also assessed Mr. Ploium with a Global Assessment of Functioning (GAF) score of 70. Tr. 348. The ALJ assigned the GAF score "some weight," finding "the medical record does not indicate the claimant's medical condition has significantly changed or worsened since this assessment." Tr. 25. Mr. Ploium contends only that the ALJ erred by failing to acknowledge Dr. Bowerly's clinical findings and opinion "support Dr. Stupski's opinion that Ploium has a memory impairment, as well as Ploium's testimony about his memory impairment, and Dr. Bowerly's findings and opinion therefore show that Ploium is limited to simple, repetitive tasks." Dkt. 15 at 7. The Court rejects the argument. Though Dr. Bowerly's objective testing may have indicated cognitive and/or mental limitations, the doctor's opinion, represented in his medical source statement, greatly tempered these findings. *See* Tr. 349. Dr. Bowerly did not opine or even suggest that Mr. Ploium was limited to simple, repetitive tasks. Indeed, his summary of findings noted that

> [t]est scores may reflect some possible decline in cognitive functioning due to recent brain injury, but there is no significant impairment noted. Further, Mr. Ploium reports that his

ORDER REVERSING THE COMMISSIONER AND REMANDING FOR
FURTHER PROCEEDINGS - 7

> concentration and memory have improved since his release from the hospital. It is expected that he will continue to experience further improvement in cognition over the next 6 to 12 months. The current evaluation fails to reveal any psychiatric problems or mental health concerns.

Tr. 348-49. Moreover, with respect to Dr. Stupski, as discussed above, Mr. Ploium argues only that the ALJ erred in rejecting his opinion he was limited to sedentary work. *See* Dkt. 15 at 4-5 ("The ALJ states that he is giving 'little weight' to Dr. Stupski's opinion that Ploium was limited to sedentary work. . . . The ALJ errs here by failing to acknowledge that Dr. Stupski was able to base his opinion on his many treatment notes. . ."). Accordingly, any additional arguments concerning "Dr. Stupski's opinion that Ploium has a memory impairment" have been waived. *See Avila v. Astrue*, No. C07-1331, 2008 WL 4104300 (E.D. Cal. Sept. 2, 2008) at *2 (unpublished opinion) (*citing Nw. Acceptance Corp. v. Lynnwood Equip., Inc.*, 841 F.2d 918, 923-24 (9th Cir. 1996) (party who presents no explanation in support of claim of error waives issue)).[3]

### 4. Robert Handler, M.D.

Mr. Ploium also argues the ALJ assigned too much weight to the opinions of state agency reviewing doctor Robert Handler, M.D. Dkt. 15 at 8. The ALJ assigned the April 2014 assessments "great weight" because they were consistent with the medical evidence that was accounted for in the RFC, and with Mr. Ploium's "average to low average scores regarding his memory with no new psychiatric evidence or new or changing medical condition indicating

---

[3] Mr. Ploium also contends in a conclusory manner that the ALJ "erred by failing to acknowledge that Dr. Bowerly's clinical findings and opinion . . . support . . . Ploium's testimony about his memory impairment." Dkt. 15 at 7. Mr. Ploium fails to provide, and the Court is not aware of, any authority requiring the ALJ to make such observations. The Court declines to find harmful error.

ORDER REVERSING THE COMMISSIONER AND REMANDING FOR
FURTHER PROCEEDINGS - 8

otherwise." Tr. 25; Tr. 85-90, 95-101. The RFC assessed by the ALJ is strikingly similar to that assessed by Dr. Handler. *Compare* Tr. 22 *with* Tr. 85-87.

The ALJ's rationale that the opinions are "consistent with the medical evidence" is merely a conclusory statement that fails to demonstrate how substantial evidence supports the ALJ's conclusion. Additionally, the ALJ's reliance on the assessment in rendering Mr. Ploium's RFC is brought into question by the Court's finding that other evidence inconsistent with the RFC must be reevaluated on remand. This is particularly true where the misevaluated opinions are presumptively entitled to greater weight than those rendered by state agency reviewing doctors. *See, e.g., Garrison*, 759 F.3d at 1013. Accordingly, the ALJ shall also reevaluate these assessments on remand, and as necessary, reevaluate the remainder of the five-step evaluation process.

**5.     Recent Evidence**

Mr. Ploium also points to two records generated in 2016; one post-dates the ALJ's decision and was considered by the Appeals Council after Mr. Ploium requested review of the ALJ's decision. Dkt. 15 at 7; Tr. 4, 438-49. On January 12, 2016, Mr. Ploium presented to the emergency department with a suspected seizure. Tr. 438. The seizure was not witnessed, but EMS reported observing a post-ictal period. *Id.* A CT scan of Mr. Ploium's head showed progressing bifrontal encephalomalacia. Tr. 440. Dr. Raymond Lee evaluated Mr. Ploium and recorded his clinical impression as "convulsions, unspecified convulsion type (HCC)." Tr. 442. The ALJ cited the record as consistent with the RFC and "with the claimant only showing average to low average scores regarding his memory with no new psychiatric evidence or new or changing medical condition indicating otherwise." Tr. 25. The ALJ also cited the evidence to support his conclusion that "another possible seizure episode" indicated Mr. Ploium was more

limited with respect to postural and environmental limitations than opined by Dr. Ramsthel. *Id.* The ALJ's analysis is insufficient; he must do more than merely offer his own conclusions. Because the Court is already remanding the case to reevaluate Dr. Ramsthel's standing/walking/sitting limitations and Dr. Stuspki's limitation to sedentary work, the ALJ shall also reevaluate the evidence from January 12, 2016 concerning Mr. Ploium's suspected seizure and discuss any impacts of Mr. Ploium's progressing bifrontal encephalomalacia.

In April 2016, Dr. Chumnei Cui, M.D., diagnosed Mr. Ploium with new onset seizure, peripheral neuropathy, back pain, neck stiffness, arm and leg pain, and insomnia due to pain. Tr. 446. He also noted two recent falls could be due to the side effects of Neurontin and Flexeril. *Id.* With respect to new evidence, the question before the Court is whether substantial evidence still supports the ALJ's decision. *See Brewes v. Commissioner of SSA*, 682 F.3d 1157, 1163 (9th Cir. 2012). Mr. Ploium fails to articulate how this evidence undermines the ALJ's decision and the Court declines to develop his argument for him. *See* Dkt. 15 at 7. Thus, any argument concerning the ALJ's treatment of Dr. Cui's findings has been waived. *See Avila*, No. C07-1331, 2008 WL 4104300.

**C.    Remedy**

Mr. Ploium requests that the Court enter a judgment reversing the ALJ's decision and awarding him disability benefits. Dkt. 15 at 15-16. A district court may remand for an award of benefits when the following conditions are satisfied: The Court must first "determine that the ALJ made a legal error, such as failing to provide legally sufficient reasons for rejecting evidence." *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) (citing *Burrell*, 775 F.3d at 1141). Next, the Court must "review the record as a whole and determine whether it is fully developed, is free from conflicts and ambiguities, and all essential factual issues have been

ORDER REVERSING THE COMMISSIONER AND REMANDING FOR
FURTHER PROCEEDINGS - 10

resolved." *Id*. (citing *Treichler v. Comm'r, Soc. Sec. Admin*., 775 F.3d 1090, 1101 (9th Cir. 2014)) (internal quotation marks and citation omitted). The Court may not remand with a direction to provide benefits unless it concludes that further administrative proceedings would serve no useful purpose. *Id*.

Mr. Ploium correctly observes that the ALJ's errors in evaluating record evidence raise doubt about the integrity of his RFC and the hypothetical presented to the VE. *See* Dkt. 15 at 14-15. The Court has remanded this case so that the ALJ can reevaluate several opinions and Mr. Ploium's RFC. This which will require the ALJ to resolve conflicts in medical testimony. These types of findings are not for the Court to decide; they are the province of the ALJ. *See, e.g., Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). (determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ). It is therefore not clear from the record before this Court that Mr. Ploium is entitled to benefits or that further administrative proceedings would serve no useful purpose. Accordingly, the Court remands this case for further proceedings consistent with the Court's instructions below.

**CONCLUSION**

For the foregoing reasons, the Commissioner's decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should reevaluate Dr. Stupski's November 2015 opinion that Mr. Ploium is limited to sedentary work, and may, as warranted, review Dr. Stupski's other treatment notes; reevaluate Dr. Ramsthel's November 2013 opinion; reevaluate the opinions of state agency reviewing doctor Robert Handler, M.D.; and reevaluate Dr. Lee's January 2016 opinion and address Mr. Ploium's CT scan showing progressing bifrontal encephalomalacia. After

reevaluating the medical opinion evidence, the ALJ shall, as necessary, also reevaluate Mr. Ploium's RFC and the remaining steps of the five-step evaluation process.

DATED this 10th day of July, 2017.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge